IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| TROY COOPER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-1557 |
| | ) | Chief Magistrate Judge Amy Reynolds Hay |
| MICHELLE DIGGS, Physician Assistant; | ) | |
| CHRIS MEYERS, Physician Assistant; | ) | |
| LOUIS FOLINO, Superintendent; | ) | |
| ROXANNE BURGWINKEL; CINDY | ) | |
| AULTMAN, Nurse; STEVE CRISTINI, | ) | |
| Counselor; M. CAPOZZA, Deputy | ) | |
| Superintendent; JOE BROWN, LPN , | ) | |
| | ) | |
| Defendants. | ) | Re: Dkt. Nos. [97] & [106] |

## **MEMORANDUM OPINION**

Troy Cooper ("Plaintiff") is currently serving sentences on two convictions[1] in the Department of Corrections ("DOC") facility at SCI-Greene. Plaintiff has filed a civil rights complaint against eight remaining Defendants. Six of those Defendants are DOC employees (collectively, "the DOC Defendants"), all of whom are represented by the Pennsylvania Attorney General's office. The remaining two defendants, namely, Physician's Assistant Michelle Diggs and Physician's Assistant Chris Meyers, are independent contractors (collectively, "the Contractor Defendants") providing medical care at SCI-Greene, where all of the complaint's allegations occurred. Both sets of Defendants have filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

---

[1] Commonwealth v. Troy Cooper, CP-51-CR-1107161-1991 (Phil. C.P.); Commonwealth v. Troy Cooper, CP-51-CR-1102651-1991 (Phil. C.P.)

Plaintiff's pro se complaint essentially alleges three separate incidents that give rise to this case. First, Plaintiff alleges that on March 3, 2006, he repeatedly requested medical attention for an asthma attack, but was not seen and treated by the nurse for roughly two hours. When Plaintiff questioned why it took so long to respond to his requests for medical attention, Nurse Aultman allegedly responded with "you have to stop with those grievances." Dkt. [96] at 4, ¶ 14.[2] Plaintiff concluded from this remark that the two-hour delay was done in retaliation for the grievance (No. 143089) he filed previously, wherein he complained about SCI-Greene's medical department. Plaintiff then filed a new grievance (No. 147836) concerning this allegedly retaliatory two-hour delay in treatment.

Second, Plaintiff alleges that on July 3, 2007, he was scheduled to seen by medical personnel, but when he asked a guard about going for his appointment, the guard allegedly responded that Defendant P.A. Diggs did not want to see Plaintiff. Dkt. [96] at 5, ¶21. Later on that same day, Plaintiff again experienced an asthma attack. He used his inhaler but received no relief from it. He then made several requests for medical attention but was not attended to for roughly four hours. Plaintiff again concluded the delay stemmed from a previous grievance filed on June 19, 2007 (No. 191514), wherein he complained about the medical department. Dkt. [96] at 5-6, ¶24; id. at 6, ¶27; id. At 7, ¶37.

The third "incident" giving rise to this case is Plaintiff's complaint that from September 15, 2006 until February 7, 2008, he was denied Program Review Committee ("PRC") hearings, required to be held every 90 days, in order to review Plaintiff's placement in the RHU. Plaintiff

---

[2] Although Plaintiff filed a complaint and amended complaints, Dkt. [96] is the operative complaint.

alleges that he was deliberately denied such reviews in retaliation for complaints and grievances which Plaintiff had filed against Defendant Cristini, identified by Plaintiff as a Counselor.

Plaintiff also alleges a conspiracy against all of the Defendants.

Plaintiff contends that the foregoing states a claim for violations of his Eighth Amendment right to be free of medical deliberate indifference, First Amendment right to be free of retaliation and his Fourteenth Amendment procedural due process rights.

*Standard of Review and the PLRA*

As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).[3] Under this standard, the court must, as a general rule, accept as true all factual allegations of the complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). Nevertheless, under the 12(b)(6) standard, a "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by, 275 F.3d 1187 (9th Cir. 2001). Nor must the Court accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir.

---

[3] In light of Twombly's overruling of the Conley v. Gibson standard that provided motions to dismiss should only be granted if "no relief could be granted under any set of facts," we reject Plaintiff's invocation of that Conley standard. Dkt. [104] at 3; Dkt. [112] at 3.

1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 554 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). In addition, the Court of Appeals in Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004), held that a "defendant may submit an indisputably authentic [document] to the court to be considered on a motion to dismiss[.]"

The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the indisputably authentic exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" Twombly, 550 U.S. at 555-556. Or put another way, a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In addition, because Plaintiff was a prisoner at the time of the filing of this civil action,[4] and because he named governmental entities or employees thereof as defendants, the screening

---

[4] See, e.g., In re Smith, 114 F.3d 1247, 1251 (D.C. Cir. 1997)("If a litigant is a prisoner on the day he files a civil action, the PLRA applies."); Colby v. Sarpy County, No. 4:01CV3130, 2006 WL 519396, at *1 (D. Neb. March 1, 2006)("The status of the plaintiff at the time the lawsuit is initiated, i.e., whether the plaintiff is incarcerated when the complaint is filed, determines whether the PLRA applies to a case.").

provisions of the Prisoner Litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915A apply herein. In addition, because he complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted *in forma pauperis* status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., CIV.A.06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), aff'd, 264 Fed.Appx. 183 (3d Cir. 2008).

All parties have consented to the plenary exercise of jurisdiction by the undersigned. Dkt. Nos. [4], [44], [50] & [115].

*Discussion*

We first take up the Contractor Defendants' motion to dismiss.[5] The Contractor Defendants argue that Plaintiff failed to exhaust his administrative remedies as concerns the July 3rd incident. Dkt. [98] at 5 to 6. They argue that because he alleged that he filed an appeal to Folino and in that appeal, Plaintiff was primarily concerned with the type of disciplinary action taken and against whom, Plaintiff has plead that he did not properly exhaust his complaints about the timeliness of his treatment. The Court is not convinced. First, as the Contractor Defendants

---

[5] To the extent that the DOC Defendants' motion incorporates the Contractor Defendants' arguments, for the same reasons we reject any of the Contractor Defendants' arguments, the DOC Defendants' arguments are also rejected.

acknowledge, Plaintiff was not required to plead exhaustion as it is an affirmative defense. Nor do we find at this stage of the litigation, i.e., on a motion to dismiss, that Plaintiff's statements in his appeal suffice to affirmatively establish that he did not exhaust his administrative remedies with respect to the delay of his treatment on July 3rd. See Dkt. [54-2] at 28.

The Contractor Defendants also argue that Plaintiff's claims for compensatory and punitive damages are barred by the PLRA provision found at 42 U.S.C. § 1997(e)(2). The Contractor Defendants have not carried their burden to show entitlement to have Plaintiff's compensatory and punitive damages claims dismissed at this stage. See, e.g., Calhoun v. Detella, 319 F.3d 936, 940 (7th Cir. 2003), which adequately disposes of Defendants' contention:

> "[i]t would be a serious mistake to interpret section 1997e(e) to require a showing of physical injury in all prisoner civil rights suits." Robinson v. Page, 170 F.3d 747, 748 (7th Cir. 1999). On several occasions we have explained that § 1997e(e) may limit the relief available to prisoners who cannot allege a physical injury, but it does not bar their lawsuits altogether. See Cassidy v. Ind. Dep't of Corr., 199 F.3d 374, 376-77 (7th Cir.2000) (damages for mental and emotional injuries barred, but prisoner may pursue all other claims for damages); Zehner, 133 F.3d at 462 (injunctive relief available). As its title suggests, § 1997e(e) is a "limitation on recovery." Accordingly, physical injury is merely a predicate for an award of damages for mental or emotional injury, not a filing prerequisite for the federal civil action itself. See Robinson, 170 F.3d at 749.
> We agree that, absent a showing of physical injury, § 1997e(e) would bar a prisoner's recovery of compensatory damages for mental and emotional injury. See Cassidy, 199 F.3d at 376. But if that same prisoner alleges some other type of non-physical injury, the statute would not foreclose recovery, assuming that the damages sought were not "for" any mental or emotional injuries suffered. See id.; Robinson, 170 F.3d at 749. This view is not novel. Indeed, in the context of First Amendment claims, we have held explicitly that prisoners need not allege a physical injury to recover damages because the deprivation of the constitutional right is itself a cognizable injury, regardless of any resulting mental or emotional injury.

In light of the reasoning of Calhoun, the Court rejects Defendants' contention that Plaintiff's claims for compensatory damages must be dismissed, as Defendants have not convinced the

Court that Plaintiff's claims for compensatory damages are claims for "mental or emotional" injury. Neither must his claims for punitive damages be dismissed. See, e.g., Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir. 2003)("Claims seeking nominal or punitive damages are typically not 'for' mental or emotional injury but rather 'to vindicate constitutional rights' or 'to deter or punish egregious violations of constitutional rights'. . . . Accordingly, regardless how we construe § 1997e(e)' s physical injury requirement, it will not affect Mitchell's ability to seek nominal or punitive damages for violations of his constitutional rights.").

The Contractor Defendants next contend that Plaintiff fails to state a claim for deliberate indifference against them because "[a]t most, Cooper has articulated a disagreement over the timeliness of an additional secondary treatment [i.e., nebulizer treatments, given that Plaintiff had an inhaler in his cell], which is insufficient to state a claim of deliberate indifference." Dkt. [98] at 11. We are not convinced. In fact, reading the Amended Complaint in a light most favorable to Plaintiff, the allegations therein complain of an intentional delay of treatment for non medical reasons, i.e., to retaliate against Plaintiff for filing grievances. Such is sufficient to state a claim of deliberate indifference. Sampson v. Berks County Prison, 171 Fed.Appx. 382, 386 (3d Cir. 2006)("We have indicated that deliberate indifference can be manifested by a variety of actions, including: (I) the denial of reasonable requests for medical treatment which expose an inmate to undue suffering; (ii) knowledge of the need for medical care and the intentional refusal to provide such care; or (iii) the delay of necessary medical treatment for non-medical reasons."); Bramson v. Sulayman, 251 Fed.Appx. 84, 86 (3d Cir. 2007)("It is true that a delay in rendering necessary medical care for non-medical reasons can constitute deliberate indifference under

7

certain circumstances.")(citing Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003)).

The Contractor Defendants next contend that Plaintiff has failed to allege a retaliation claim against them. They acknowledge that "[a] prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him.'" Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)(some internal quotations omitted). They then go onto argue, apparently, that Plaintiff failed to assert the second prong, when they contend "[n]o misconduct was alleged to have been issued as a result of contact with the Medical Defendants let alone that any misconduct was a false charge. Other than general and conclusory allegations, no retaliatory action of any kind at the hands of the Medical Defendants is described in the" operative complaint. Dkt. [98] at 12. While it is true that Mitchell v. Horn concerned allegations of guards retaliating against the plaintiff therein by filing false misconduct charges, there is no implication in the case that the filing of false misconducts is the only possible adverse action that can constitute retaliation. Surely the delay of arguably necessary medical treatment, in the form of delaying a needed nebulizer treatment in order for the Plaintiff to be able to breathe (accepting as true the allegations of the complaint), based upon a desire to retaliate against Plaintiff for filing grievances against the Medical Department at SCI-Greene, qualifies as an "adverse action" and is sufficient to state a retaliation claim even under Twombly.

The Contractor Defendants next contend that Plaintiff fails to state a conspiracy claim.

8

We will address this issue below. They also contend that Plaintiff fails to state a punitive damages claim because no outrageous conduct is alleged. We find the allegations of the complaint, i.e., an intentional delay of emergency medical treatment for the non-medical reason of desiring to retaliate against Plaintiff for his filing of grievances, accepting as true the allegations of the complaint, as we must at this stage, to be sufficiently outrageous so as to qualify for punitive damages.

We next take up the DOC Defendants' motion to dismiss. We will not repeat arguments made by the DOC Defendants which incorporated the Contractor Defendants' arguments and which were already addressed above.

The DOC Defendants argue that the complaint fails to state a claim of deliberate indifference. We find that the allegations of the complaint, to wit, the DOC defendants intentionally delayed treatment for Plaintiff's asthma attacks, based upon their desire to retaliate against him for filing grievances against the Medical Department sufficient to state a claim upon which relief can be granted. We will specifically address only Defendant Burgwinkel because the claims against her are the least clear. Plaintiff alleges that she came on the housing unit to administer insulin to diabetic prisoners. Plaintiff alleges that he made her aware of his emergency, she called medical and reported to Plaintiff that someone from medical would see him shortly. Reading the complaint in a light most favorable to Plaintiff and drawing all inferences in his favor, the operative complaint alleges that despite the emergency nature of his asthma attack, Defendant Burgwinkel went about her business, when she could have and should have helped him. See Dkt. [96] at 6, ¶ 27 ("defendant Burgwinkel just left Plaintiff in his cell having an asthma attack."). This is sufficient, as are the more explicit allegations made against

the other DOC Defendants (other than Defendant Folino, whom we address immediately below), for their roles in the alleged delay of treatment.

The DOC Defendants point out that as to Defendant Folino, his only alleged involvement is that he participated in the grievance process, denying the grievances that Plaintiff filed after the two alleged delays of treatment for Plaintiff's asthma attacks. See Dkt. [96] at 5, ¶18; 7 ¶¶ 40 to 42; 8 at ¶¶43 to 45; 10, 5 to 6 & 9. The DOC Defendants contend that such is insufficient to establish Folino's personal involvement in the alleged constitutional violation. The DOC Defendants are correct.

For the rule is that "[t]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." Rauso v. Vaughn, No. CIV. A. 96-6977, 2000 WL 873285, at *16 (E.D.Pa., June 26, 2000). See also Overholt v. Unibase Data Entry, Inc., 221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir. 2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.") (citations omitted); Mitchell v. Keane, 974 F.Supp. 332, 343 (S.D.N.Y. 1997) ("it appears from the submissions before the court that Mitchell filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. Mitchell's dissatisfaction with this response does not constitute a cause of action."); Caldwell v. Beard, NO. 2:07-CV-727, 2008 WL 2887810, at *4 (W.D.Pa. Jul 23, 2008)("Such a premise for liability [i.e., for performing a role in the grievance process] fails as a matter of law."), aff'd, __ Fed.Appx. __, 2009 WL 1111545 (3d Cir. April

27, 2009); Caldwell v. Hall, NO. CIV.A. 97-8069, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000)("The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."); Orrs v. Comings, No. CIV.A. 92-6442, 1993 WL 418361, at *2 (E.D.Pa. Oct. 13, 1993)("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim."); Jefferson v. Wolfe, NO. CIV A. 04-44, 2006 WL 1947721, at *17 (W.D.Pa. July 11, 2006)("These allegations [of denying grievances or grievance appeals] are insufficient to establish such Defendants' personal involvement in the challenged conduct under Section 1983. See Watkins v. Horn, 1997 WL 566080 at * 4 (E.D.Pa..[sic]1997) (concurrence in an administrative appeal process is not sufficient to establish personal involvement)").

Moreover, even if the rule were otherwise, the operative complaint alleges at most that Defendant Folino failed to discipline the allegedly responsible actors for their delay in treating Plaintiff. See, e.g., Dkt. [96] at 10, ¶ 6 ("The failures of defendant Folino to take disciplinary action for the first incident on 3/22/06 condoning the practice of delaying treatment gave the approval of retaliation . . ."). However, such actions or inactions on the part of Defendant Folino, which concededly occurred only **after** the two alleged instances had already occurred, cannot be said to have been the "cause" of Plaintiff's constitutional injuries. Without such causation there can be no liability. See, e.g., Troublefield v. City of Harrisburg, Bureau of Police, 789 F.Supp. 160, 166 (M.D. Pa. 1992)("Brower v. Inyo County, 489 U.S. 593 (1989) . . . requires that some nature of volitional act on the part of the state actor must cause the harm to plaintiff for a fourth amendment excessive force claim to sound."), aff'd, 980 F.2d 724 (3d Cir. 1992) (TABLE); Ricker v. Weston, 27 Fed.Appx. 113, 119 (3d Cir. 2002)("This decision not to

11

discipline the officers does not amount to active involvement in appellees' injuries given that all of the injuries occurred before the decision.").

This is true notwithstanding Plaintiff's conclusory allegation that Defendant Folino's failure to take disciplinary action after the first incident on March 22, 2006, allegedly "condon[ed] the practice of delaying treatment" and "gave the approval of retaliation against the plaintiff for submitting grievances." Dkt. [96] at 10, ¶ 6. These conclusory allegations are insufficient under Twombly to withstand the DOC Defendants' partial motion to dismiss. As the Court in Twombly explained: "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555-556. The alleged incidents occurred more than one year apart and, furthermore, the complaint's sparse and conclusory allegations concerning the actions or inactions of Defendant Folino after the March 2006 incident simply lack the "heft" under Twombly to carry Plaintiff's claims against Defendant Folino from the possible to the plausible. Twombly, 550 U.S. at 557 ("The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'"). Accordingly, the motion to dismiss as against Defendant Folino will be granted.

In like manner, the Court finds Plaintiff's allegations of conspiracy to be conclusory and lacking sufficient factual heft within the contemplation of Twombly to withstand the motions to dismiss. See e.g., Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989)("[t]he allegations [of conspiracy] must be sufficient to 'describe the general composition of the conspiracy, some or all

12

of its broad objectives, and the defendant's general role in that conspiracy.'"). Nor does this requirement that allegations of conspiracy be more than conclusory run afoul of the generous pleading standard under Fed.R.Civ.P. 8(a) as construed in Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993). See, e.g., Loftus v. SEPTA, 843 F.Supp. 981, 988 (E.D. Pa. 1994) ("Requiring that a complaint alleging conspiracy flesh out in some detail the nature of the scheme does not run afoul of the admonition in Leatherman .... Rather, in the context of a conspiracy, the 'short and plain statement' provision of Rule 8 is satisfied only if the defendant is provided with the degree of particularity that animates the fair notice requirement of the rule."). Accordingly, the conspiracy claims will be dismissed for failure to state a claim upon which relief can be granted.

To the extent that Plaintiff is attempting to make out a Fourteenth Amendment procedural due process violation based upon the denial of his 90 day PRC review hearings from September 15, 2006 until February 7, 2008, a period of time of less than 17 months, the Court finds that such fails to state a claim upon which relief can be granted pursuant to the screening provisions of the PLRA. See, e.g., Dkt. [96] at 10, ¶¶ 8 to 9.

Conducting a procedural due process analysis involves a two step inquiry: the first question to be asked is whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process clause and, if so, the second question to be asked is whether the process afforded the complaining party comported with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

A protected liberty interest may arise from one of two sources: (1) directly from the Fourteenth Amendment's due process clause itself or (2) from state law. Hewitt v. Helms, 459

13

U.S. 460, 466 (1983). There is no liberty interest created directly by the Fourteenth Amendment that prevents an inmate from being subjected to disciplinary confinement. See Sandin v. Conner, 515 U.S. 472, 484 (1995) ("Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation"); Stephany v. Wagner, 835 F.2d 497, 499 (3d Cir. 1987)("the Due Process Clause does not give a prisoner a liberty interest in remaining in the general prison population").

Neither has Pennsylvania created a liberty interest in being free from disciplinary or administrative confinement. Addressing the issue of state created liberty interests, the United States Supreme Court in Sandin v. Conner, 515 U.S. at 484, held that a state government "may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Placing, or more accurately, maintaining Plaintiff in administrative confinement for less than 17 months without any hearing does not impose such an atypical and significant hardship as a matter of law under the facts alleged in the operative complaint and so does not deprive him of any liberty interest. See e.g., Siddiq v. Edlund, 8 Fed.Appx. 522, 524 (6th Cir. 2001)("placement in administrative segregation [for twenty months] did not constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"); Jones v. Baker, 155 F.3d 810 (6th Cir.1998) (administrative confinement for two and one-half years was not atypical and significant)(cited approvingly in Fraise v. Terhune, 283 F.3d 506, 523 (3d Cir.2002)) ;

14

Bryant v. Cortez, 536 F.Supp.2d 1160 (C.D.Cal. 2008)(placement of state inmate in administrative segregation unit for eighteen months pending resolution of disciplinary charge against him did not impose atypical and significant hardship on inmate in relation to ordinary incidents of prison life, and thus did not violate inmate's due process rights, even though placement entailed restrictions on inmate's exercise, shower, hygiene, and visitation privileges, and denial of work and educational opportunities, and state law required officials to conduct disciplinary hearing within thirty days); Washington-El v. Diguglielmo, No. 06-CV-4517, 2008 WL 2954745 (E.D.Pa. July 29, 2008)(17 months in administrative custody is not atypical and significant so as to qualify as a liberty interest). Cf. Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (confinement in administrative custody for fifteen months with only one hour of exercise per day five days per week did not amount to an atypical and significant hardship and thus did not deprive prisoner of a liberty interest). Hence, because the time Plaintiff spent in the administrative custody without a required PRC hearing was less than 17 months, and so no liberty interest was at stake pursuant to Griffin, Plaintiff was not entitled under the Federal Constitution to any procedural protections.

This is true notwithstanding the fact that Pennsylvania rules and regulations may have required a PRC hearing every 90 days. The Supreme Court has observed that "[a] liberty interest is of course a substantive [in contrast to a procedural] interest of an individual; it cannot be the right to demand needless formality. Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. . . . The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an

15

independent substantive right." Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983) (internal quotations, citations and footnotes omitted). See also United States v. Jiles, 658 F.2d 194, 200 (3d Cir. 1981)("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension.") (quoting Slotnick v. Staviskey, 560 F.2d 31, 34 (1st Cir. 1977)); Shango v. Jurich, 681 F.2d 1091, 1101-02 (7th Cir. 1982) ("[A] state created procedural right is not itself a liberty interest.... States may decide to engage in such proceedings, but the due process clause does not compel them to do so because no constitutionally cognizable substantive interest of the prisoner is at stake."); Hayes v. Muller, No. 96-3420, 1996 WL 583180, at *7 (E.D. Pa. Oct. 10, 1996) ("[A] state does not violate an individual's federal constitutional right to procedural due process merely by deviating from its own established procedures."). Having been deprived of no liberty interest by the Defendants' failure to abide by DOC policies requiring 90 day review hearings, the complaint fails to state a procedural due process claim.

An appropriate Order follows.

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 24 June, 2009

cc: Troy Cooper
BY-5707
SCI Greene
175 Progress Drive
Waynesburg, PA 15370

Counsel of Record via CM-ECF

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TROY COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-1557 |
| | ) | Chief Magistrate Judge Amy Reynolds Hay |
| MICHELLE DIGGS, Physician Assistant; | ) | |
| CHRIS MEYERS, Physician Assistant; | ) | |
| LOUIS FOLINO, Superintendent; | ) | |
| ROXANNE BURGWINKEL; CINDY | ) | |
| AULTMAN, Nurse; STEVE CRISTINI, | ) | |
| Counselor; M. CAPOZZA, Deputy | ) | |
| Superintendent; JOE BROWN, LPN , | ) | |
| | ) | |
| Defendants. | ) | Re: Dkt. Nos. [97] & [106] |

## **ORDER**

AND NOW, this 24th day of June 2009, for the reasons set forth in the accompanying Memorandum Opinion, IT IS HEREBY ORDERED that the Motion to Dismiss filed by the Contractor Defendants, Dkt. [97], is hereby granted in part and denied in part. It is GRANTED as to the conspiracy claims; it is DENIED in all other respects. IT IS FURTHER ORDERED that the DOC Defendants' Partial Motion to Dismiss, Dkt. [106], is granted in part and denied in part. It is GRANTED as to all conspiracy claims and as to all claims against Defendant Folino, who is dismissed as a party defendant; it is DENIED in all other respects.

IT IS FURTHER ORDERED that any procedural due process claim concerning the lack of 90-day hearings for less than 17 months is DISMISSED pursuant to the PLRA for failing to state a claim upon which relief can be granted.

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

cc: Troy Cooper
BY-5707
SCI Greene
175 Progress Drive
Waynesburg, PA 15370

Counsel of Record via CM-ECF