IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TROY COOPER,                          )
                                      )
                    Plaintiff,        )
                                      )
          vs.                         )          Civil Action No. 07-1557
                                      )          Chief Magistrate Judge Amy Reynolds Hay
MICHELLE DIGGS, Physician Assistant;  )
CHRIS MEYERS, Physician Assistant;    )
LOUIS FOLINO, Superintendent;         )
ROXANNE BURGWINKEL; CINDY             )
AULTMAN,  Nurse; STEVE CRISTINI,      )
Counselor; M. CAPOZZA, Deputy         )
Superintendent; JOE BROWN, LPN ,      )
                                      )
                    Defendants.       )          Re: Dkt. Nos. [145] & [151]


## **MEMORANDUM OPINION**

Troy Cooper ("Plaintiff") is currently serving several sentences[1] in the Department of

Corrections ("DOC").  At the time of the events giving rise to this case, Plaintiff was

incarcerated in SCI Greene.  This case has been the subject of prior proceedings, see, e.g., Dkt.

[118][2] and, as a result, there are only four remaining claims: (1) an Eighth Amendment deliberate

indifference claim against Defendant Nurse Cindy Aultman based on an alleged delay in treating

Plaintiff's asthma which was alleged to have occurred on March 22, 2006; (2) a First

Amendment retaliation claim against Nurse Cindy Aultman based on the same alleged delay; (3)

an Eighth Amendment deliberate indifference claim against Defendants Michelle Howard-Diggs,

Chris Meyer, Roxanne Burgwinkel, and Joe Brown based on alleged delay in treating Plaintiff's

---

[1] Commonwealth v. Troy Cooper, CP-51-CR-1107161-1991 (Phil. C.P.);  Commonwealth v.
Troy Cooper, CP-51-CR-1102651-1991 (Phil. C.P.)

[2] Dkt. [118] addressed motions to dismiss filed by the two sets of defendants.

asthma which was alleged to have occurred on July 3, 2007 and (4) a First Amendment

retaliation claim against these same four defendants based upon the same alleged delay in

treatment on July 3, 2007.   Defendants Chris Meyer[3] ("Meyer") and Michelle Howard-Diggs

("Diggs") are both Physician Assistants, employed by a private health care contractor and are

both represented by private counsel (collectively, "the Contractor Defendants").   Roxanne

Burgwinkel ("Burgwinkel") is a nurse, as are Cindy Aultman and Joe Brown, all three of whom

are represented by the Pennsylvania Attorney General's Office, (collectively, "the DOC

Defendants").

As pertinent here, Plaintiff's pro se complaint essentially alleges two separate incidents

that give rise to this case.  First, Plaintiff alleges that on March 3, 2006, he repeatedly requested

medical attention for an asthma attack, but was not seen and treated by the nurse for roughly two

hours.  When Plaintiff questioned why it took so long to respond to his requests for medical

attention, Nurse Aultman allegedly responded with "you have to stop with those grievances."

Dkt. [96] at 4, ¶ 14.[4]  Plaintiff concluded from this remark that the two-hour delay was done in

retaliation for grievance No. 143089, which he filed previously, wherein he complained about

SCI-Greene's medical department.  Plaintiff then filed a new grievance, i.e., No. 147836,

concerning this alleged two-hour delay in treatment.

Second, Plaintiff alleges that on July 3, 2007, he was scheduled to seen by medical

personnel, but when he asked a guard about going for his appointment, the guard allegedly

_____

[3] Although listed in the caption as "Meyers", it appears that the name is spelled "Meyer."  See
Dkt. [148-1] at 10 (affidavit by Meyer, where name is spelled "Meyer").

[4] Although Plaintiff filed a complaint and amended complaints, Dkt. [96] is the operative
complaint.

responded that Defendant P.A. Diggs did not want to see Plaintiff.  Dkt. [96] at 5, ¶21.  Later on

that same day, Plaintiff again experienced an asthma attack.  He used his inhaler but received no

relief from it.  He then made several requests for medical attention but was not attended to for

roughly four hours.  Plaintiff again concluded the delay stemmed from a previous grievance filed

on June 19, 2007, i.e., Grievance No. 191514, wherein he complained about the medical

department.  Dkt. [96] at 5-6, ¶24; id. at 6, ¶27; id., at 7, ¶37.

Plaintiff contends that the foregoing states a claim for violations of his Eighth

Amendment right to be free of medical deliberate indifference and his First Amendment right to

be free of retaliation.

All parties have consented to have the Magistrate Judge exercise plenary jurisdiction and

enter final judgment.  Dkt. Nos. [4] (Plaintiff's consent); [115] (Burgwinkel's consent); [50]

(Contractor Defendants' consent); [115] (Aultman and Brown's consent).

*Standard of Review*

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving

party, "the pleadings, depositions, answers to interrogatories and admissions on file, together

with the affidavits, if any, show that there is no genuine issue of material fact and the movant is

entitled to judgment as a matter of law."  Fed.R.Civ.Proc. 56(c).  Summary judgment may be

granted against a party who fails to adduce facts sufficient to establish the existence of any

element essential to that party's case, and for which that party will bear the burden of proof at

trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden

of identifying evidence that demonstrates the absence of a genuine issue of material fact.

Once that burden has been met, the non-moving party must set forth "specific facts showing that

there is a <u>genuine issue for trial</u> . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  In reviewing the summary judgment evidence, the Court has no duty to search the record for triable issues; rather, it need rely only on those portions of the evidentiary record to which the nonmoving party directs its attention.  <u>See Guarino v. Brookfield Township Trustees</u>, 980 F.2d 399, 403 (6th Cir. 1992).

"The substantive law governing the dispute will determine which facts are material, and only disputes over those facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>DeHart v. Horn</u>, 390 F.3d 262, 267 (3d Cir. 2004)(internal quotations omitted).  An issue of material fact is genuinely disputed only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita</u>, 475 U.S. at 587.  As a corollary of this principle from <u>Matsushita</u>, while it is generally true that on summary judgment motions, a court should not resolve credibility issues, nevertheless, where the evidence adduced by a party is so incredible that reasonable minds could not believe it, the court is not barred from entering summary judgment based on such a record. <u>Kreimar v. Bureau of Police for Town of Morristown</u>, 958 F.2d 1242, 1250 (3d Cir. 1992) ("[w]hile summary judgment may be based upon affidavits, conflicts of credibility should not be resolved on a hearing on the motion for summary judgment **unless** the opponent's evidence is 'too incredible to be believed by reasonable minds.'")(emphasis added)(*quoting* <u>Losch v. Borough of Parkesburg</u>, 736 F.2d 903, 909 (3d Cir. 1984)).  The inquiry involves determining whether the

evidence (other than that which is too incredible to be believed by reasonable minds) presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting Anderson v Liberty Lobby, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50. Moreover, it is not enough for the nonmovant to show that there is some dispute as to facts, rather, "only disputes over facts that might affect the outcome of the suit will prevent summary judgment." Anderson, 477 U.S. at 248. *Accord* Rexnord Holdings v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994) ("[T]he mere existence of *some* factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"); Dykes v. DePuy, Inc., 140 F.3d 31, 36 (1st Cir. 1998) ("summary judgment is not precluded by just any factual quibble").

In short, the summary judgment motion is an evidence testing device to see if there is sufficient evidence to support a party's position with respect to an issue for which that party bears the burden of proof at trial so as to justify holding a trial. Summary judgment "is the . . . moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001).

*Discussion*

We first take up Plaintiff's Eighth Amendment claim of deliberate indifference based on the alleged delay in treatment for his asthma that occurred on March 3, 2006.

The Supreme Court has explained that analysis of a violation of the Eighth Amendment involves a two pronged inquiry: (1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment and (2) a "subjective inquiry" into the mind of the person inflicting the harm. See Wilson v. Seiter, 501 U.S. 294 (1991). The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976)(internal quotations omitted). The Court explained the subjective prong of an Eighth Amendment "deliberate indifference" claim is met when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). As a corollary of the deliberate indifference standard, negligence by staff at the prison, medical personnel and physicians in treating prisoners is not sufficient to state an Eighth Amendment violation. Estelle, 429 U.S. at 105-06.

Plaintiff bears the burden to prove, by competent evidence, both the subjective and the objective components of the Eighth Amendment. Newland v. Achute, 932 F.Supp. 529, 532 (S.D.N.Y., 1996); Pasha v. Barry, No. Civ. A. 96-466, 1996 WL 365408, *1 (D.D.C. June 21, 1996).

Plaintiff's claim is that the two hour delay in treating his asthma attack on March 3, 2006 violated his rights under the Eighth Amendment.

The general rule is that "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in . . . harm." Mendoza v.

6

Lynaugh, 989 F.2d 191, 195 (5ᵗʰ Cir. 1993); Marks v. Kansas, 75 Fed.Appx. 712, 715 (10ᵗʰ Cir.

2003)("[A] delay in medical care only constitutes an Eighth Amendment violation where the

plaintiff can show that the delay resulted in substantial harm.").  This is the rule in this Circuit.

See, e.g., Brooks v. Kyler, 204 F.3d 102, 105 n.4 (3d Cir.  2000) (the prisoner-plaintiff

"presented no evidence of any harm resulting from a delay in medical treatment.").[5]  Instantly,

Plaintiff has failed to adduce any evidence of harm caused by the delay.

The evidence of record showed that when Nurse Aultman finally arrived after a delay

according to Plaintiff of, at most, two hours, Plaintiff's

> pulse ox (measurement of level of oxygen in your [i.e., Plaintiff's] blood) was
> 99% on the nurse's arrival to your cell and that you did have some wheezing in all

_____

[5]  Thus, we reject, as contrary to Brooks, Plaintiff's unpersuasive argument for adopting the legal rule in this Circuit which was announced by the Sixth Circuit in Blackmore v. Kalamazoo County, 390 F.3d 890, 889-900 (6ᵗʰ Cir. 2004), which held that "where a plaintiff's claims arise from an injury or illness 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention,' Gaudreault, 923 F.2d at 208, the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame.").  See Dkt. [157] at 7.  Moreover, even if Plaintiff could persuade us that the rule would be adopted by the Third Circuit, we find that the facts of the Sixth Circuit case are sufficiently different from the facts of this case that the rule would not apply.  In Blackmore, the inmate was a pre-trial detainee, unlike here where Plaintiff is a convicted prisoner.  The Court of Appeals for the Third Circuit has made fairly clear that a pre-trial detainee's rights under the Fourteenth Amendment's Due Process clause standards provide greater protection than does the Eighth Amendment standards applicable to post convicted prisoners.  Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 n.5 (3d Cir. 2003)(the Fourteenth Amendment may provide greater protections for pre-trial detainees than the Eighth Amendment provides for convicted prisoners); Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005)("The district court then erred in concluding that 'pretrial detainees are afforded essentially the same protection as convicted prisoners and that an Eighth Amendment analysis is appropriate for determining if the conditions of confinement rise to the level of a constitutional violation.'").

Hence, even if the more protective Blackmore rule were to be adopted in this Circuit, there is no persuasive reason why the more protective provisions of the Fourteenth Amendment standards for pre-trial detainees should be applied to Plaintiff herein, who is a post-convicted prisoner.  Nor do the general medical treatises Plaintiff supplies to the Court suffice to show that in Plaintiff's particular case he suffered the requisite harm from any delay.

> lung fields. The nurse administered a nebulizer treatment. After the treatment she assessed your lung sounds and administered a second nebulizer treatment. Since the pulse ox was 99% on her arrival, you were not in any immediate physical danger.

Dkt. [151-1] at 12. <u>See</u> <u>also</u> Dkt. [151-2] at 14 (Progress note of 3/22/06). After a second nebulizer treatment, Plaintiff reported feeling much better. Dkt. [151-2] at 14. Hence, on Plaintiff's failure to adduce evidence of additional harm caused by the delay, Defendant Aultman would be entitled to summary judgment as to this Eighth Amendment claim. <u>Crowley v. Hedgepeth</u>, 109 F.3d 500, 502 (8th Cir. 1997)(inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed); <u>Daniel v. Levin</u>, 172 Fed.Appx. 147, 149 (9th Cir. 2006)("Daniel failed to provide objective evidence of any additional serious injury caused by the alleged delays."); <u>Westerfield v. Penner</u>, NO. S 02 2621, 2006 WL 2226102, at *11 (E.D.Cal. Aug. 3, 2006)("The court is reduced, as courts often are, in granting summary judgment because no jury could find that plaintiff was actually harmed by any delay in treatment.").

Moreover, the record lacks evidence of a "delay" in treatment, which is Plaintiff's burden to adduce. <u>Fox v. Lawrence County Jail</u>, CIV. A. 06-1010, 2008 WL 2704546, at *10 (W.D.Pa. June 30, 2008) ("Instantly, Plaintiff has failed to adduce any evidence of additional harm caused by the delay. Indeed, he has not even adduced evidence of a delay. As part of his burden under the Eighth Amendment to show an objectively serious deprivation, he had the burden of showing that transport by the ambulance would have been quicker than transport by the Sheriff's department.")(footnote omitted). Plaintiff's evidence only shows that he pushed his cell call

8

button at approximately 8 AM, and thereby contacted the corrections officer (name unknown) in the "bubble" to inform them of his asthma attack and his "wish to see a nurse." Dkt. [161-7] at 1. The officer responded and told Plaintiff that he would "contact medical and let them know." Id. An hour later, at approximately 9:15 AM, Plaintiff pushed the call button again in his cell due to no one yet seeing Plaintiff from the medical department. Id. The same corrections officer responded and before Plaintiff could say anything the guard allegedly stated "Cooper, I called already, are you alright?" Id. Plaintiff let the corrections officer know that he was not alright that his asthma was getting worse. At lunchtime, which was approximately 9:30 AM, two corrections officers came to deliver the lunch trays to Plaintiff's cell and he asked them why wasn't medical called. Id. They both stated that they did call. Id. One of the guards then stated they would call again. Id.

However, there is no evidence showing to whom the guards allegedly spoke in the medical department, i.e., whether they spoke with Nurse Aultman or someone else. In fact, the only evidence of record as to when Nurse Aultman became aware of Plaintiff's need or wish to see a nurse is Nurse Aultman's responses to Plaintiff's Interrogatories. In response to a question as to approximately what time she became aware of Plaintiff's request to see a nurse, Nurse Aultman responded by stating "Per nursing progress note, shortly before 1012 hours." Dkt. [161-11] at 3, ¶ 2. In response to a question as to when she arrived on the block to see Plaintiff, Nurse Aultman responded, "Per nursing notes of 3/22/06, 1012 hours or shortly before." Thus, the evidence of record shows that Nurse Aultman did not "delay" treatment for Plaintiff given that she became aware of Plaintiff's need shortly before 1012 hours, i.e., 10:12 AM, and that she treated him at approximately 10:12 hours. While there may have been a "delay" of some 2 hours

between Plaintiff's first call to the guard and the time Plaintiff actually was seen by medical personnel, there was no "delay" on the part of Nurse Aultman, where the evidence of record shows that she only became aware of Plaintiff's need to see a nurse shortly before 10:12 AM and that she saw and treated Plaintiff at approximately 10:12 AM.

In the alternative, the same reasoning with regard to "delay" also establishes that there is no credible evidence of the subjective prong of an Eighth Amendment claim. There is no credible evidence that Nurse Aultman acted with deliberate indifference to Plaintiff's serious medical need.

The only "evidence" of the subjective prong that Plaintiff offers is what he alleges Nurse Aultman said to him in response to his question of why it took so long for Medical to respond. Nurse Aultman was alleged to have responded by saying, "you have to stop with those grievances." Dkt. [96] at 4, ¶ 14. See also Dkt. [161-34] at 1. We note that Plaintiff made no such allegation in the grievance he filed concerning this incident. The only thing he stated in that grievance is as follows: "Because of grievance # 143039 which is still ongoing, a concentrated effort is evidently in progress to retaliate and punish me for submitting legitimate grievance. An intentional infliction of emotional distress is the obvious choice of method. The physical manifestation of mental and physical suffering caused by the intention[al] (2) two hour delay to respond is **evidents** [sic, should be "evidence"]. I **guess** the message is if you submit a grievance on medical they will put your life and well being in jeopardy." Dkt. [161-7] at 1 (emphasis added). If Nurse Aultman did say at the time of the event what Plaintiff later alleges in his civil rights complaint, it would be expected that Plaintiff would have said so in his grievance alleging retaliation, rather than guessing what the message was intended to be

10

conveyed by the two hour delay.  If Nurse Aultman really said what Plaintiff later says she said, he would not have had to "guess" what the message was.   If Nurse Aultman did say what Plaintiff later alleges in his civil rights complaint, it would be expected that Plaintiff would have pointed to her alleged clear statement as the "evidence" of the retaliation in his nearly contemporaneous grievance, and not merely point to the two hour delay as the "evidence." Thus, we conclude that the summary judgment record demonstrates that Plaintiff's evidentiary proffer in support of the subjective prong against Nurse Aultman is "too incredible to be believed by reasonable minds" within the contemplation of <u>Kreimar</u>.   <u>See</u>, <u>e.g.</u>,   <u>Bacon v. Hennepin County Medical Center</u>, No. 06-CV-2359, 2007 WL 4373104, at *13 (D.Minn. Dec. 11, 2007)("Bacon told the Smyrak story only once, in her January 2007 deposition. If Smyrak in fact gave Bacon permission to stop calling in, surely she would have mentioned this crucial piece of information at some earlier point (such as in responding to Weber, in litigating her eligibility for unemployment benefits, or in her complaint) or at some later point (such as in her declaration). As a general rule, a court ruling on a summary-judgment motion must assume that the nonmoving party's evidence is true. But that general rule must yield in those rare cases when testimony submitted by the nonmoving party is literally unbelievable. *See Losch v. Borough of Parkesburg*, 736 F.2d 903, 909 (3d Cir. 1984) . . .  Bacon's claim that Smyrak authorized her to stop complying with HCMC's call-in policy is such testimony; no reasonable jury could believe it."), *aff'd*, 550 F.3d 711 (8th Cir. 2008).  <u>See also</u> <u>Cooper v. Blevins</u>, No. Civ. A. 90-3540, 1991 WL 30703 (E.D. Pa. March 4, 1991); <u>U.S. v. Doyle</u>, 276 F.Supp.2d 415, 432 n.8 (W.D. Pa. 2003). We find on this record that Plaintiff's allegation that Nurse Aultman said "you got to stop with those grievances" is the only evidence of the subjective prong and we also conclude that this

allegation is too incredible to be believed by a reasonable jury in light of the entire record.

Accordingly, we find "the evidence is merely colorable . . . or is not significantly probative,"

within the meaning of Anderson, 477 U.S. at 249-50, as to the subjective prong and so Defendant

Aultman is entitled to summary judgment based on the lack of evidence as to the subjective

prong.

Hence, either because Plaintiff failed to adduce sufficient evidence of the objective prong

in showing the two hour delay of March 22, 2006 caused any additional harm or because Plaintiff

failed to adduce sufficient evidence of the subjective prong, Defendant Aultman is entitled to

summary judgment as to Plaintiff's Eighth Amendment claim.

Next we take up Plaintiff's First Amendment retaliation claim.  In order to prove a First

Amendment retaliation claim, a plaintiff must show:  (1) that he engaged in constitutionally

protected activity; (2) that he was subject to adverse actions by a state actor; and (3) the

constitutionally protected activity was a substantial motivating factor in the state actor's decision

to take adverse action.  Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) (citing, Mt. Health

City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1997)).  Furthermore, in order to

demonstrate the second prong of adverse action, Plaintiff must allege an action sufficiently

negative to "deter a prisoner of ordinary firmness from exercising his First Amendment rights."

Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).   Even reading the summary judgment

evidence in a light most favorable to Plaintiff, there is simply no credible evidence of the third

prong with respect to Nurse Aultman's alleged actions or inactions on March 22, 2006.  The only

evidence of the causal connection is Plaintiff's allegation that Nurse Aultman stated "you have to

stop with those grievances."  As we just noted, this allegation is too incredible to be believed by

a reasonable jury based on the entire record of this case and hence, Nurse Aultman would be entitled to summary judgment as to Plaintiff's First Amendment retaliation claim as well. We further note that the evidence of record indicates that Defendant Aultman was not even aware of Grievance No. 143039, filed on February 3, 2006, which Plaintiff alleges is the grievance that provoked the allegedly intentional and retaliatory delay by Nurse Aultman in responding to Plaintiff's asthma attack. See, e.g., Dkt. [151-1] at 12 ("I want you to know this was in no way retaliation for a pervious [sic] grievance. The nursing staff is not aware of the grievances that an inmate files unless the nurse is directly involved. . . ." Dkt. [151-1 at 12. We note that Nurse Aultman does not appear to have been directly involved in Plaintiff's Grievance No. 143039.[6]

In the alternative, as noted above in performing the Eighth Amendment analysis, the evidence of the "delay" insofar as concerned Nurse Aultman, which is the "adverse action" allegedly taken by her, shows **at most** a brief delay between the time that she learned of Plaintiff's need for a nurse, i.e., shortly before 1012 hours, i.e., 10:12 AM, and the time she came to treat Plaintiff with two nebulizer treatments, i.e., around 10:12 AM. We find that this "delay" under the facts of this case is not sufficient to qualify as a "adverse action" taken by Nurse Aultman within the contemplation of Anderson v. Davila, 125 F.3d 148.

Hence, either because Plaintiff failed to adduce credible evidence of the causal connection between Nurse Aultman's actions or inactions on March 22, 2006 or because there is no evidence that the "delay" attributable to Nurse Aultman constituted an adverse action, Nurse Aultman is entitled to summary judgment as to Plaintiff's First Amendment retaliation claims.

---

[6] Plaintiff generally contests the fact that other staff members do not know of grievances filed where those staff members are not directly involved. Dkt. [160] at 8, ¶ 58. But he points to no evidence that in fact Defendant Aultman actually knew of the existence of Grievance No. 143089.

We now take up Plaintiff's Eighth Amendment claim regarding the alleged delay of treatment that occurred on July 3, 2007. Plaintiff alleges that Defendant Diggs was supposed to see Plaintiff earlier in the day about a sore throat on July 3, 2007. However, Plaintiff complains that Defendant Diggs never did see Plaintiff for the sore throat on that day. Plaintiff claims that when he asked a corrections officer about whether Plaintiff would be seen, the Corrections Officer stated, "she doesn't want to see you." Dkt. [140] at 3. Plaintiff claims that later in the day, around 2 PM, he began to experience tightness in his chest. He used his inhaler which didn't appear to work. At approximately 2:20 PM, he informed Corrections Officer Feathers, who was making his rounds, and Plaintiff stated that his asthma is "messing with" him and that he needed to see a nurse. Dkt. [96] at 5, ¶ 23. Officer Feathers called the Medical Department. There is no evidence that indicates with whom he spoke in Medical.

Plaintiff alleges in his complaint that "Defendant Brown was responsible for the Restricted Housing Unit (RHU) for that day and took that phone call from Officer Feathers, [Nurse Brown] was told by Defendant Diggs not to respond to the medical emergency call." Dkt. [96] at 5 to 6, ¶ 24. While we note that Plaintiff's amended complaint may be sworn to, Dkt. [96] at 12, and thus considered as an affidavit for summary judgment purposes, there is no demonstration of the basis for Plaintiff's knowledge of what Defendant Diggs may or may not have said to Defendant Brown or that Feathers spoke with Defendant Brown and, thus, Plaintiff's allegation in the sworn complaint cannot create a genuine issue of material fact.

The rule is that in order for a verified complaint to qualify as a competent affidavit for purposes of a summary judgment motion, it must meet the same criteria as an affidavit under Rule 56, which provides in relevant part that "[s]upporting and opposing affidavits shall be made

14

on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e).  See also Weberg v. Franks, 229 F.3d 514, 526 n.13 (6th Cir. 2000) ("Although statements in a verified complaint may function as the equivalent of affidavit statements for purposes of summary judgment . . . affidavit statements must be based on personal knowledge."). Instantly, Plaintiff does not say how he came to know what Defendant Diggs allegedly said to Defendant Brown.  While it is true that "the nonmoving party need not produce evidence in a *form* that would be admissible at trial," Thomas v. International Business Machines, 48 F.3d 478, 485 (10th Cir. 1995)(internal quotations omitted), nevertheless, the affidavit must, at the least, reveal the basis of the affiant's personal knowledge of the facts attested to so as to be competent evidence under the requirements of Rule 56.  Ways v. City of Lincoln, 909 F.Supp. 1316, 1322 (D. Neb. 1995)(commenting on the requirement of Rule 56(e) that the affidavit "show affirmatively that the affiant is competent to testify as to the matters stated therein", the court concluded that "[a]t a minimum this means that the affidavit must establish the competence of the affiant to testify about the subject matter of his or her affidavit."). Plaintiff's verified complaint lacks such an affirmative demonstration of how Plaintiff knows what Defendant Diggs allegedly said to Defendant Brown, and hence is incompetent to create a genuine issue of material fact.  The verified complaint also lacks a basis for determining how Plaintiff "knew" that Corrections Officer Feathers spoke with Defendant Brown on the phone. There is no evidence from Corrections Officer Feathers as to whom he spoke with in Medical when he called.

Around 3 PM Officer Feathers is alleged to have called the medical department again. Dkt. [96] at 6, ¶ 25. Defendant Nurse Burgwinkel came to the RHU pod to do regular insulin injections. Officer Feathers allegedly told Defendant Burgwinkel to check Plaintiff out. Defendant Burgwinkel did stop at Plaintiff's cell and asked him what was happening. Plaintiff responded, "my asthma[,] I can't breathe." Dkt. [96] at 6, ¶ 26. Defendant Burgwinkel left the POD, came back and told Plaintiff, "I called, they should be up here." <u>Id.</u>, ¶ 27. Thereafter, Defendant Burgwinkel left.

At approximately 4:55 PM, Corrections Officer Tenant came to Plaintiff's cell and said, "Cooper be patient, I am working on this. Medical seems not to care." <u>Id.</u>, ¶29. At 5 PM, Officer Feathers came to Plaintiff and said, "Cooper, I called Lt. Smokey to try and make medical come up. He called and someone said they'd be up." <u>Id.</u>, ¶ 31. At 5 PM, Sergeant Gagnon came to Plaintiff and said, "medical called and said they can't do nothing [sic] for you." <u>Id.</u>, ¶ 32.

At approximately 6 PM, Defendant Meyer, came to see Plaintiff, checked Plaintiff's lungs and provided a nebulizer treatment. Id., ¶ 37.

Plaintiff contends that the roughly 3 hour and 40 minute delay (i.e., from 2:20 PM, when the Medical Department was first allegedly made aware of Plaintiff's asthma attack, to 6 PM when Plaintiff was finally treated), violated his Eighth Amendment rights.

However, just as Plaintiff failed to adduce any medical evidence that the 2 hour delay on March 22, 2006 caused him any harm, so too, has he failed to adduce any medical evidence that this 3 hour and 40 minute delay occurring on July 3, 2007 caused him any harm. Hence, there is

no evidence of the objective prong.   Thus, on this basis alone Defendants Diggs, Meyer, Burgwinkel and Brown would be entitled to summary judgment.

In fact, the medical evidence of record establishes that at 6:05 PM, Physician Assistant Christopher Meyer examined Plaintiff, who complained, "I can't breath." Dkt. [148-2] at 7. Plaintiff was assessed by Defendant Meyer, who noted no wheezing in lung fields,[7] that his Peak Flow ("PF") initially was 550, vital signs were stable (i.e., "VSS") and that after Plaintiff was given a nebulizer treatment, his Peak Flow (i.e., "PF") was 650. Dkt. [148-2] at 7; Dkt. [148-1] at 6, ¶ 10.  Plaintiff stated after the nebulizer treatment, "I'm better now." Physician Assistant Meyer also noted that "I/M [i.e., "inmate"] forcing upper airway sounds." Id.  In the assessment section of the progress note denoted by "A," Physician Assistant Meyer noted "Asthma [with] malingering component?" Id.[8]   Thus, the relevant medical evidence fails to disclose any harm from the alleged delay.  Given that it is Plaintiff's burden to establish that delay resulted in harm, the silent record redounds to his detriment.   In any case, even resolving all record doubts in Plaintiff's favor, without any medical evidence that the "delay" in treating Plaintiff's putative asthma attack caused him any additional harm, Plaintiff has failed to carry his burden to show the objective prong.

---

[7]  Plaintiff suggests that he only had no wheezing in his lungs after the nebulizer treatment.  Dkt. [156] at 4, ¶ 15, however, the progress note is clear that Defendant had no wheezing in lungs before the nebulizer treatment given that such assessment of "no wheezing" comes prior to the place in the progress note which states "after nebulizer . . ."

[8]  We note that the Concise Statement of Facts for the Contractor Defendants translates Defendant Meyer's note as "asthma with a lingering component." Dkt. [147] at 3, ¶ 16.  This record ambiguity is of no consequence to the resolution of the present case.  It would be helpful to the Court if for critical parts of handwritten progress notes/evidence, the author thereof gave a typed transcription of those notes or that evidence.

In the alternative, these Defendants would be entitled to summary judgment based on the absence of evidence of the subjective prong.

As to Defendant Diggs, the only evidence of record is that she did not know at any time of Plaintiff's need to be seen for his asthma on July 3, 2007. Dkt. [148-1] at 16, ¶ 6 (Question: "Were you aware at any time on 7/3/07 that plaintiff was requesting to be seen by a medical staff member for an asthma attack?" Answer: "No. . . ."). Furthermore, in response to a question as to whether or not she ever told anyone not to respond to Plaintiff's calls to be seen, Diggs answered that she did not tell anyone not to respond to Plaintiff's calls. Dkt.[148-1] at 16, ¶ 8. Hence, there is no evidence of the subjective prong as to Defendant Diggs. Thus, she is entitled to summary judgment on this basis as well as the lack of evidence as to the objective prong.

As to Defendant Meyer, there is no evidence as to precisely when Defendant Meyer became aware of Plaintiff's request to be seen. Dkt. [148-1] at 4 to 5, ¶ 4. This absence of evidence redounds to Plaintiff's detriment given that Plaintiff bears the burden to establish both the subjective and objective prong and that there was actually delay on the part of any responding defendant. Fox v. Lawrence County Jail, CIV. A. 06-1010, 2008 WL 2704546 at *10 (W.D.Pa. June 30, 2008) ("Instantly, Plaintiff has failed to adduce any evidence of additional harm caused by the delay. Indeed, he has not even adduced evidence of a delay. As part of his burden under the Eighth Amendment to show an objectively serious deprivation, he had the burden of showing that transport by the ambulance would have been quicker than transport by the Sheriff's department.")(footnote omitted).

Plaintiff does erroneously claim that Defendant Meyer was working as early as 2:30 PM. Dkt. [156] at 4, ¶ 13. However, the incontrovertible evidence of record is that Physician

Assistant Meyer worked on July 3, 2007 from 16:30 (i.e., 4:30 PM ) to 20:30 (i.e., 8:30 PM). Dkt. [84] at 2, ¶ 4.[9]  Thus, the evidence of record establishes that the earliest Defendant Meyer could have become aware of Plaintiff's need to see a nurse was when he began to work which was at 4:30 PM.  That Plaintiff was not seen until 6 PM, i.e., 90 minutes later, fails to establish that Defendant Meyer acted with deliberate indifference absent a showing that Defendant Meyer was informed of the allegedly emergent nature of Plaintiff's need to be seen.  The only evidence of what Defendant Meyer knew was what apparently Defendant Brown told Defendant Meyer and the only evidence of record on that score is Defendant Brown's statement that "since C. Meyer, PA-C, was going over to the RHU this defendant asked him to check on inmate's condition."  Dkt. [157-10] at 3, ¶ 8.   This is especially true since Defendant Meyer specifically denied that anyone ever told him to take his time and/or not respond to Plaintiff's medical calls. Dkt. [157-11] at 5, ¶ 9.  Thus, for all that the record shows, Defendant Meyer knew nothing of

---

[9] Plaintiff appears to be confused by military time.  Although he contends that the evidence of record shows that Defendant Meyer was working as early as 2:30 PM, the evidence he points to, i.e., "Exhibit 17 #4," which is the affidavit contained in Dkt. [84], at 2, ¶ 4, clearly states that Meyer worked from 16:30 (i.e., 4:30 PM ) to 20:30 (i.e., 8:30 PM).  The other piece of evidence Plaintiff points to is "Exhibit 23 #8" which the Court takes to mean, Dkt. [157-10] at 3, ¶ 8, which does not establish any time frame.  However, Exhibit 23 #8  does establish that Defendant Nurse Brown worked from 2 PM to 10:30 PM.  Id., at ¶ 7.  Again though, there is little evidence to establish precisely when Nurse Brown either learned of Plaintiff's need to see a nurse, see, e.g., Dkt. [157-9] at 4, ¶¶ 2 & 6 (possibly between 3:00 PM to 3:30 PM) or when Nurse Brown then informed Defendant Meyer of Plaintiff's need or why there was any delay between these times, if indeed there was delay.  The most that the record establishes is that Nurse Brown first learned of Plaintiff's need to see a nurse from Defendant Burgwinkel between 3 and 3:30 PM and that Nurse Brown thereafter asked Defendant Meyer to see Plaintiff since Defendant Meyer was going to the RHU anyway.  **If** Defendant Meyer did not arrive at work until his starting time of 4:30 PM, then a delay of roughly an hour is supported by the record between the time Defendant Brown learned of Plaintiff's need and the time Defendant Brown asked Meyer to see Plaintiff.  However, there is no evidence as to when Meyer actually arrived at work or when Brown asked Meyer to go to see Plaintiff.  The absence of any such evidence redounds to Plaintiff's detriment as he bears the burden to show deliberate indifference.  At most, the current state of the record could support merely a finding of negligence as to Defendant Brown's actions or inactions.

the allegedly emergent nature of Plaintiff's need to be seen and hence, no reasonable jury could find that Defendant Meyer possessed the necessary deliberate indifference so as to find for Plaintiff on this Eighth Amendment claim of delay in treating Plaintiff. There is no evidence that Defendant Meyer delayed in treating Plaintiff or knew of Plaintiff's need for more immediate care.

As for the subjective prong on the part of Defendant Nurse Brown, the only evidence is that at some unspecified time between 2 PM and 10:30 PM, Dkt. [157-10] at 3, ¶ 7, he received a call from Plaintiff's block, (it appears to be that the call made to Defendant Brown by Defendant Burgwinkel, occurred between 3 and 3:30 PM, see footnote 9, *supra*), and was told that Plaintiff wanted to be seen by medical for an asthma attack. Defendant Brown, cognizant that Defendant Meyer was going over to Plaintiff's block asked Defendant Meyer to check on Plaintiff. Id., at ¶ 8. This is the only evidence of record that is relevant to the subjective prong and we have no hesitancy in concluding that no reasonable jury could find for Plaintiff on the subjective prong against Defendant Brown. Absent evidence that the allegedly emergent nature of the call provided notice to Defendant Brown that Plaintiff needed to be seen immediately, and there is no such evidence, Defendant Brown cannot be found to possess the deliberate indifference as is required to make out an Eighth Amendment claim. At most, it could be said that Defendant Brown acted negligently in not assuring that Plaintiff would be seen more quickly.

The same is true of Defendant Burgwinkel. The evidence of record shows that she became aware of Plaintiff's desire to see medical personnel for "his asthma condition," Dkt. [157-9] at 1, ¶ 2, between 3 PM and 3:30 PM. After learning of Plaintiff's request to see medical concerning his asthma condition, Defendant Burgwinkel, at some unspecified time

thereafter, called the Medical Department and spoke with Defendant Brown. Dkt. [157-9] at 4, ¶ 6(a). That she made the call to medical and communicated Plaintiff's need certainly cannot be said to constitute evidence of deliberate indifference. To the extent that she herself did not "drop everything" and personally respond to provide Plaintiff some kind of treatment also does not establish deliberate indifference, because Plaintiff has not adduced any evidence that she was aware of Plaintiff needing more immediate medical attention. For all that the record shows, Defendant Burgwinkel, spoke with Plaintiff, personally saw his condition, and assessed that a call to the medical department to inform them that Plaintiff wanted a breathing treatment for his asthma was all that was medically necessary. There is no evidence that she personally believed Plaintiff needed immediate medical attention and then refused to provide that attention. The evidence is that after speaking with Plaintiff and apparently assessing the situation,[10] she placed a call to Medical to inform them of Plaintiff's need. That she did not do more is evidence of at most, negligence and not deliberate indifference. In fact, the record shows that she apparently assessed that it was more important for her to finish her insulin rounds than to immediately treat Plaintiff. See Dkt. [157-4] at 1 (Plaintiff's Grievance No. 192749 filed 7/10/07 concerning the delay in treatment on July 3, 2007, wherein Plaintiff notes that after Defendant Burgwinkel called the Medical Department and returned to Plaintiff's cell, she told him that she had called Medical and that they should be up and that "I have to finish my insulin run."). On this record, no

_____

[10] Plaintiff claims that Defendant Burgwinkel never physically examined Plaintiff, Dkt. [140] at 5, ¶ 7, but it is undisputed that she saw Plaintiff and spoke with Plaintiff and there is no evidence that during that interaction, Defendant Burgwinkel, in the exercise of her professional judgement, could not have properly assessed that Plaintiff did not need immediate care and that it was sufficient to simply call to the Medical Department to have Plaintiff seen and treated by someone from there.

reasonable jury could find for Plaintiff as to the subjective prong concerning Defendant Burgwinkel.

Accordingly, Defendants Diggs, Meyer, Brown and Burgwinkel are all entitled to summary judgment as to Plaintiff's Eighth Amendment deliberate indifference claims concerning the July 3, 2007 incident, either because Plaintiff failed to adduce evidence of the objective prong, i.e., that there was delay and that the delay resulted in any harm, or because he failed to adduce evidence of the subjective prong.

Lastly, we take up Plaintiff's First Amendment retaliation claim against these four defendants. Plaintiff alleges that the delay in treatment arose because of Plaintiff's filing of grievances or of complaining earlier in the day of July 3, 2007 as to the failure of Defendant Diggs to see Plaintiff on sick call as scheduled. There is absolutely no evidence of record to show that Defendants Meyer, Burgwinkel, Brown or Diggs had any knowledge of Plaintiff's filing of any specific grievances that he alleges their actions were taken in retaliation for or that these four Defendants had any knowledge that Plaintiff had complained of the failure of Defendant Diggs to see Plaintiff on sick call earlier on July 3, 2007.[11] For this reason, these Defendants are entitled to summary judgment as to the First Amendment retaliation claim given his utter failure to carry his burden with respect to the third prong of a retaliation claim.

Accordingly, for any or all of the foregoing reasons, the Defendants' two summary judgment motions will be granted. The Clerk is to mark the case closed. The pro se Plaintiff is

---

[11] The record demonstrates that Plaintiff was not seen by Defendant Diggs earlier on July 3, 2007 for sick call because of conflicting movements of the prisoners in the RHU. Dkt. [152] at 12; Dkt. 151-2 at 18 (Progress Note dated 7/3/07 under Letter O for objective "unable to see this date [due to] multiple conflicting movements of IM in RHU.").

advised that in accordance with Federal Rule of Appellate Procedure 4, he has thirty days in which to file a notice of appeal with the Clerk of this Court should he desire to appeal this Court's ruling to the Court of Appeals for the Third Circuit.

Furthermore, pursuant to 28 U.S.C. § 1915(a), the Court certifies that any appeal from this order would not be taken in good faith.

Appropriate Orders follow.


/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 4 June, 2010

cc:     Troy Cooper
        BY-5707
        SCI Camp Hill
        PO Box 200
        Camp Hill, PA 17001

        Counsel of Record via CM-ECF

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TROY COOPER,                          )
                                      )
              Plaintiff,              )
                                      )
       vs.                            )     Civil Action No. 07-1557
                                      )     Chief Magistrate Judge Amy Reynolds Hay
MICHELLE DIGGS, Physician Assistant;  )
CHRIS MEYERS, Physician Assistant;    )
LOUIS FOLINO, Superintendent;         )
ROXANNE BURGWINKEL; CINDY             )
AULTMAN,  Nurse; STEVE CRISTINI,      )
Counselor; M. CAPOZZA, Deputy         )
Superintendent; JOE BROWN, LPN ,      )
                                      )
              Defendants.             )     Re: Dkt. Nos. [145] & [151]


## <u>ORDER</u>

AND NOW, this 4th day of June 2010, for the reasons set forth in the accompanying

Memorandum Opinion, IT IS HEREBY ORDERED that the Motion for Summary Judgment

filed by the Contractor Defendants, Dkt. [145], is hereby GRANTED.  IT IS FURTHER

ORDERED that the DOC Defendants' Motion for Summary Judgment, Dkt. [151], is hereby

GRANTED.

Furthermore, pursuant to 28 U.S.C. § 1915(a), the Court certifies that any appeal from

this order would not be taken in good faith.


                                    /s/ *Amy Reynolds Hay*
                                    Chief United States Magistrate Judge

cc:    Troy Cooper
       BY-5707
       SCI Camp Hill
       PO Box 200
       Camp Hill, PA 17001

Counsel of Record via CM-ECF