IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TROY COOPER, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 07-1557 |
| ) | Magistrate Judge Maureen P. Kelly |
| STEVE CRISTINI, Counselor; MARK ) | |
| CAPOZZA, Deputy Superintendent; ) | Re: ECF No. 208 |
| Defendants. ) | |

## OPINION

**KELLY, Magistrate Judge**

Plaintiff, Troy Cooper ("Cooper"), a *pro se* litigant, is a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), and is currently incarcerated at the State Correctional Institution ("SCI") at Camp Hill. Cooper was previously housed at SCI Greene where he was apparently confined to the Restrictive Housing Unit ("RHU") from April 16, 2004, until February 18, 2010. It is undisputed that inmates housed in the RHU are to be seen by the Program Review Committee ("PRC") every 90 days, but that Cooper was not seen by the PRC between June 15, 2006, and February 7, 2008. Cooper claims that Defendants Steve Cristini ("Cristini"), a Counselor at SCI Green, and Mark Capozza ("Capozza"), Deputy Superintendent, (collectively "Defendants") were responsible for, and deliberately denied him such reviews, thereby violating his right to due process under the Fourteenth Amendment to the United States Constitution. Cooper also claims that Cristini and Capozza violated his First Amendment rights by denying him the 90-day PRC reviews in retaliation for Cooper having filed grievances against Cristini.

Presently before the Court is a Motion for Summary Judgment submitted on behalf of the Defendants. ECF No. 208. For the reasons that follow, the Motion will be granted.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

It is undisputed that Cooper was housed in the RHU at SCI Greene from April 16, 2004, until February 18, 2010, and that inmates housed in the RHU on Administrative Custody ("AC") status are to be seen by the PRC every 90 days. It is also undisputed that a 90-day PRC review was held on June 15, 2006. Cooper, however, did not have another 90-day PRC review until February 7, 2008, at which time he was on Disciplinary Custody ("DC") status due to a misconduct for which he had received 60 days DC time.

Defendant Cristini was employed by the DOC as a Corrections Counselor I at SCI Greene up until June 19, 2005, at which time he became a Corrections Counselor II. During much of the time relevant to this litigation, it appears that Cristini was Cooper's counselor and responsible for conducting weekly rounds.

Defendant Capozza has been employed by the DOC as the Deputy Superintendent for Centralized Services at SCI Greene since July 15, 2007, and was the Major of Unit Management immediately prior to that time. It also appears that Capozza frequently sits on the PRC and often did so while the Major of Unit Management.

Cooper commenced this action on November 15, 2007, alleging that Defendants did not provide him with adequate medical treatment relative to his asthma in violation of his rights under the First and Eighth Amendments to the Constitution. See ECF Nos. 1, 3. Neither Cristini nor Capozza were named as Defendants. ECF No. 3. On July 22, 2008, Cooper amended his Complaint, naming Cristini and Capozza as Defendants and alleging for the first time that Defendants violated his due process rights as provided for by the Fourteenth Amendment and his First Amendment right to be free from retaliation. ECF No. 67. These claims were maintained

by Copper in both the second Amended Complaint and the third Amended Complaint that he subsequently filed on August 13, 2008, and September 30, 2008, respectively. ECF Nos. 74, 96.

Motions to Dismiss were subsequently filed by the various defendants, ECF Nos. 97, 106, and on June 24, 2009, the Court filed a Memorandum Opinion in which it, *inter alia*, invoked its screening responsibilities under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A, and dismissed Cooper's due process claims against Cristini and Capozza. ECF No. 118. Although Cooper's retaliation claims against Cristini and Capozza were not addressed by the Court, and thus remained viable issues, the case proceeded only as to the claims brought against the other defendants that survived the Motions to Dismiss. ECF Nos. 118, 178-1, pp. 7-8.

Ultimately, on June 4, 2010, Motions for Summary Judgment submitted by the remaining defendants were granted and judgment was entered in favor of all the defendants and against Cooper. ECF Nos. 166, 169. Cooper appealed to the United States Court of Appeals for the Third Circuit and, on April 11, 2011, the Court of Appeals issued a Judgment affirming in part and vacating in part the District Court's Judgment and remanded the case for further proceedings. ECF No. 177. Specifically, in its Opinion, the Court of Appeals affirmed the District Court's Judgment with respect to Cooper's claims brought against the other defendants, but vacated the Judgment with regard to Cooper's due process and retaliation claims against Cristini and Capozza. ECF No. 178-1. In so doing, the Court of Appeals not only found that the District Court overlooked the conditions of Cooper's confinement in the RHU, which was relevant to the due process analysis and whether Cooper had a state-protected liberty interest, but that the record was not sufficiently developed for the Court to make that determination. Id. The Court of Appeals also noted, correctly so, that Cooper's retaliation claims against Cristini and Capozza

3

had simply gotten lost in the litigation. Id. As such, the Court remanded the case to the District Court on those two issues.

On remand, the District Court issued an Order in which it permitted Cooper to file an Amended Complaint to add any new factual allegations relative to his remaining due process and retaliation claims. ECF No. 181. The Court also cautioned Cooper that it would strike any new claims and any new defendants that Cooper attempted to add in the Amended Complaint. Id. Cooper nevertheless filed an Amended Complaint on June 1, 2011, which included an Eighth Amendment claim. ECF No. 182. Although that portion of the Amended Complaint was subsequently stricken by the Court, see ECF No. 183, Document No. 182 remains the operative complaint and, hereinafter, is referred to as the "Amended Complaint."[1]

The case subsequently proceeded through discovery and on January 6, 2012, Defendants filed a Motion for Summary Judgment ("the Motion"). ECF No. 208. Cooper filed an Opposition Brief to Defendants' Motion March 8, 2012. ECF No. 221. Accordingly, Defendants' Motion is now ripe for review.

## II. STANDARD OF REVIEW

Summary judgment is warranted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135, 140 (3d Cir. 2004). When

---

[1] This case was reassigned to the undersigned by Order of Chief Judge Gary L. Lancaster dated June 17, 2011. ECF

the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). See McGreevy v. Stroup, 413 F.3d 359, 363-64 (3d Cir. 2005). In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Matreale v. New Jersey Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007).

## III. DISCUSSION

Cooper has brought his claims pursuant to 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), *citing* Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979) (footnote omitted) . Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color

---

No. 187.

of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. at 423.

### A. Fourteenth Amendment Due Process Claims

As previously discussed, Cooper has alleged that Cristini and Capozza deliberately denied him the requisite 90-day PRC reviews of his confinement in the RHU, thereby violating his right to due process provided by the Fourteenth Amendment.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. To establish a claim under the Due Process Clause, a plaintiff must show that he had a protected liberty or property interest of which he has been deprived, and that the process afforded him did not comport with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). In the state prison context, changes in conditions of an inmate's confinement can result in the deprivation of a constitutionally protected liberty interest only where the liberty interest involved is one of "real substance." See Sandin v. Conner, 515 U.S. 472, 477, 484-487 (1995). Accordingly, such interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484-487 (citations omitted).

Although the United States Court of Appeals for the Third Circuit remanded the case to allow Cooper to develop the facts with respect to the conditions of confinement and whether they rose to the level of an atypical and significant hardship, see ECF No. 178-1, pp. 6-7, this Court

need not address those questions because, for the reasons that follow, Cooper is otherwise unable to establish his due process claims.

It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007). Personal involvement in the alleged wrongdoing may be shown "through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), *quoting* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). See Ruff v. Health Care Administrator, 441 F. App'x 843, 846, 2011 WL 3607449 at *2 (3d Cir. 2011) (per curiam) ("[t]o be liable under § 1983, a defendant must have some personal involvement in the underlying unconstitutional conduct"). See also Kaucher v. County of Bucks, 455 F.3d 418, 432 n. 7 (3d Cir. 2006), *quoting* Estate of Smith v. Marasco, 430 F.3d 140, 151 (3d Cir. 2005) ("[i]n order to prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights").

Here, there does not appear to be any evidence of record from which a fact finder could reasonably conclude that either Cristini or Capozza were personally involved in the denial of Cooper's 90-day PRC reviews. Defendants have submitted Declarations in which they have attested to the fact that the clerk to the Corrections Classification and Program Manager ("CCPM") is responsible for scheduling the 90-day PRC reviews through the PRC tracking system and that they are not, and have never been, involved in the scheduling process. ECF No. 209-3, p. 9, ¶¶ 4, 5; p. 13, ¶¶ 6, 7. Moreover, Defendants maintain that they do not have access

to the PRC tracking system or the ability to remove an inmate from the PRC list. Id. at p. 10, ¶ 6; p. 13, ¶ 8. Cristini and Capozza have also indicated that neither Cooper, nor anyone else, ever informed them that Cooper had not been seen by the PRC during the 19 months at issue and that they had no knowledge of the oversight until Cooper's reviews resumed in February of 2008. Id. at p. 10, ¶ 7; p. 13, ¶¶ 10, 11. In addition, when asked at his deposition who he questioned about not getting reviewed by the PRC, Cooper responded that he had only questioned unidentified block officers and not that he had questioned or informed either Cristini or Capozza. ECF No. 209-2, p. 31.

This evidence adequately demonstrates an absence of evidence to support Cooper's case, and the burden therefore shifts to Cooper to demonstrate that a genuine issue exists for trial. Cooper, however, has failed to set forth sufficient facts to overcome summary judgment.

Indeed, Cooper has not only failed to point to any evidence relative to Capozza but, in fact, has expressly admitted that neither he, nor anyone else, ever informed Capozza that he was not receiving 90-day PRC reviews and that Capozza had no knowledge of that fact until Cooper's review on February 7, 2008. ECF Nos. 209, p. 3, ¶¶ 16, 18; ECF No. 222, pp. 2-3, ¶¶ 16, 18.[2] Having admitted that Capozza was unaware that Cooper was not receiving the 90-day reviews, it follows that Capozza could not have been involved in denying Cooper those reviews. Capozza therefore is entitled to summary judgment on Cooper's due process claims.

---

[2] Further, the only reference Cooper makes to Capozza in the Amended Complaint is the conclusory statement that he "set in motion actions to retaliate against plaintiff for submitting grievances. By intentionally denying plaintiff mandatory 90 day PRC reviews." ECF No. 182, p. 4. Moreover, in his brief filed in opposition to Defendants' Motion, Cooper merely concludes that, because Capozza is part of the PRC, he is responsible for scheduling. ECF No. 221, p. 3. The absence of any evidence to support Cooper's contention, however, is fatal to his claims.

8

With respect to Cristini, Cooper first points to the "Counselor Comments" contained in a "30/60 Day Review" in which Cristini accuses Cooper of "[c]ontinuous yelling at female staff when entering [ ] housing area, disrespectful toward staff," and contends that this evidences Cristini's involvement in denying him 90-day PRC reviews. See ECF No. 222-6. The relevancy of Cristini's Counselor Comment to Cooper's due process claim, however, is unclear particularly as the 30/60 Day Review that Cooper relies on is dated March 2, 2005, and Cooper was not denied 90-day PRC reviews until June 15, 2006, over a year later.

Second, Cooper points to the portion of the DC-ADM 802, which sets forth the DOC's policies on Administrative Custody Procedures, wherein it states that "[t]he PRC will interview every inmate in AC status every 90 days unless the Unit Management Team recommends an earlier review." ECF No. 222-7, p. 8, ¶ E.5. Cooper also points to the fact that the DC-ADM 802, does not state that the CCPM is solely responsible for scheduling the reviews. The Policy regarding 90-day PRC reviews, however, is not in dispute. Moreover, the DC-ADM 802 does not speak to scheduling or how it is processed. Thus, the fact that the DC-ADM 802 does not mention the CCPM or that it is responsible for scheduling 90-day PRC reviews, does not provide the basis for discrediting Cristini's Declaration or for finding that he was personally involved in discontinuing Cooper's 90-day PRC reviews.

Third, citing to the job description for a DOC Corrections Counselor, Cooper suggests that because it was Cristini's responsibility to "handle any problem plaintiff has," and because he was continually denied 90-day PRC reviews, it follows that Cristini was involved. See ECF No. 221, p. 3; ECF No. 222-9, pp. 2-4. Merely because the job description states that it is the counselor's responsibility to assist inmates in resolving problems, however, does not mean that

9

Cristini was aware of, much less orchestrated, the fact that Cooper was not receiving the requisite 90-day PRC reviews.

Finally, Cooper relies on the allegations he made in an amended complaint, which he purports to have filed in this matter, dated September 30, 2008.[3] Cooper has asserted therein that in response to a grievance he filed, Cristini came to Cooper's cell and stated, "the more you cry the worst [sic] this will get." ECF No. 222-8, p. 9, ¶ 53. Cooper also alleged in the amended complaint that "[w]henever Plaintiff asked Defendant Cristini, 'when is PRC going to see me?' Defendant Cristini would respond, 'when they want to.'" Id. at p. 9, ¶ 57. Cooper argues that this evidence establishes that Cristini was aware that Cooper was not receiving the 90-day PRC reviews. It is not at all clear, however, when this conversation allegedly took place relative to the period of time that Cooper was not being reviewed by the PRC. Moreover, merely asking when the PRC is going to see him is not the equivalent of putting Cristini on notice that Cooper had not received a review for over 90 days and certainly does not suggest that Cristini was responsible for the delay.

Accordingly, Cooper has failed to show that a genuine issue of fact exists. Because no reasonable fact finder could conclude that Cristini was personally involved in the denial of Cooper's 90-day PRC reviews, he is entitled to summary judgment on Cooper's Fourteenth Amendment due process claims.

### B. First Amendment Retaliation Claims

Cooper's First Amendment retaliation claims merit a similar fate.

---

[3] Although the amended complaint submitted by Cooper in connection with the instant Motion does not appear to be an exact copy of that which was filed on September 30, 2008, see ECF No. 96, the paragraphs to which Cooper refers are contained in both documents. Cf. ECF No. 96, pp. 8-9, ¶¶ 53, 57; ECF No. 222-8, p. 9, ¶¶ 53, 57.

In order to establish a clam for retaliation, an inmate must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by a prison official; and (3) that there is a causal connection between the exercise of his constitutional rights and the adverse action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). To constitute an adverse action for purposes of a retaliation claim, the action taken must be "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Id., *quoting* Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

With respect to his retaliation claims, Cooper has alleged in the Amended Complaint that he and Cristini had a "rocky relationship," and that Cooper was forced to submit grievances against Cristini; that in retaliation for submitting those grievances, Cristini falsified information in Cooper's block reports; that Cooper consequently filed another grievance against Cristini complaining about a false report; that as a result of filing that grievance, Cristini retaliated against him by removing him from the 90-day PRC review list; that Cooper subsequently made numerous attempts to submit grievances regarding the lack of 90-day PRC reviews; and that Cristini had the grievances intercepted by the block officers. ECF No. 182, ¶¶ 2-9. Cooper's claims, therefore, appear to be predicated on his having engaged in the protected activity of filing grievances against Cristini at various times during his incarceration in the RHU.

As to Defendant Capozza, the Court reiterates here that the only reference Cooper makes to Capozza in the Amended Complaint is that Capozza "set in motion actions to retaliate against plaintiff for submitting grievances. By intentionally denying plaintiff mandatory 90 day PRC reviews." ECF No. 182, p. 4. He makes no factual allegations against Capozza relative to his retaliation claim at all. Moreover, Cooper has not even mentioned Capozza in his Brief relative

11

to his retaliation claims other than to conclude, without pointing to any supporting evidence, that "Capozza was aware of [his] grievances . . . ." ECF No. 221, p. 5. Cooper's conclusion, however, is wholly insufficient to create an issue of fact for trial and, Capozza is entitled to summary judgment on Cooper's retaliation claims as well. As such, the following discussion pertains solely to Cooper's retaliation claims against Defendant Cristini.

### 1. Falsifying Documents

Cooper suggests that Defendant Cristini retaliated against him by falsifying "block reports." The only report to which Cooper refers, however, is the 30/60 Day Review dated March 2, 2005, in which Cristini commented that Cooper was continuously yelling at female staff and was disrespectful toward the staff. ECF No. 222-6, p. 2. Cooper complained about the 30/60 Day Review in Grievance No. 113449, which he submitted on March 25, 2005. As such, he was clearly aware that the allegedly false information was contained in the Review at that time. See ECF No. 222-4, p. 2. Cooper did not initiate this action, however, until November 15, 2007 (over two years after the date of the grievance), and did not name Cristini or Capozza as Defendants until July 22, 2008 (over three years after the date of the grievance). ECF Nos. 1, 67. Because a two year statute of limitations applies to claims brought pursuant to Section 1983, Cooper's claims in this regard are time barred. See Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998) (finding that the plaintiff's due process claims brought under section 1983 are subject to a two year statute of limitations).[4]

---

[4] Although not yet decided by the Court of Appeals for the Third Circuit, district courts within the Third Circuit have held that because the PRLA requires a prisoner to exhaust all administrative remedies before filing a section 1983 claim in federal court, the statute of limitations may be tolled pending the exhaustion of the prison grievance system. See Everett v. Nort, 2011 WL 6704314 at *2 (W.D. Pa. Nov. 29, 2011), citing Dasilva v. Sherriff's Dept., 413 F. App'x 498, 502 n.3 (3d Cir. Jan. 20, 2011). Cooper, however, appears to have conceded that he did not exhaust his

12

Further, although Cooper alleges that the 30/60 Day Review dated March 2, 2005, contained false information and that Cristini included the false information in retaliation for Cooper having filed Grievance No. 113449 against Cristini, Cooper did not submit Grievance No. 113449 until March 25, 2005, which was three weeks *after* Cristini submitted the allegedly retaliatory false 30/60 Day Review. ECF No. 222-4, p. 2; ECF No. 222-6, p. 2. Because the 30/60 Day Review predates Cooper's Grievance, the 30/60 Day Review cannot have been submitted (or falsified) in retaliation for that Grievance. Cooper, therefore, is unable to establish a causal connection between Grievance No. 113449 and the alleged false report.

Cooper also refers the Court to a letter written by Secretary of Corrections, Jeffrey A. Beard ("Beard"), to Cooper's mother, Ms. Esther Blocker, dated January 25, 2005. ECF No. 222-2, pp. 2-3. Beard apparently wrote the letter in response to an inquiry Ms. Blocker made concerning Cooper's privileges and his complaints that Cristini was not providing him with weekly reviews. Id. Cooper suggests that the letter from Beard shows that he complained about Cristini before Cristini submitted the 30/60 Day Review dated March 2, 2005. The Court disagrees. While the letter may provide evidence that Cooper's complaints were known to Secretary Beard, it does not demonstrate that Cristini had any knowledge that Cooper's mother had made a complaint or that Cristini was otherwise aware of Cooper's complaints. Indeed, given the tenure of Beard's letter, there does not appear to be any reason that Cristini would have been informed of Ms. Blocker's inquiry or Beard's responsive letter. Id.[5]

---

administrative remedies relative to Grievance No. 113449, thereby precluding a finding that the statute of limitations was tolled. See ECF No. 221, p. 5.

[5] It should also be pointed out here that there is no evidence of record that would support a finding that Cristini's March 2, 2005 30/60 Day Review contained any false information. While Cooper maintains that Cristini's statement

13

## 2. Denial of Cooper's 90-Day PRC Reviews

Nor is Cooper able to show that Cristini retaliated against him for filing Grievance No. 113449 by denying him 90-day PRC reviews. Indeed, the Court has already found that the record is devoid of any evidence to establish that Defendants were personally involved in denying Cooper the requisite reviews. Thus, it cannot be said that either Capozza or Cristini took an adverse action against him.

Further, Cooper filed Grievance No. 113449 complaining about Cristini's allegedly false 30/60 Day Review on March 25, 2005. Cooper, however, was not removed from the 90-day PRC review scheduling list until after June 15, 2006 -- well over a year later. Under these circumstances, the Court is hard pressed to find a causal connection between the two events as there is no temporal proximity. See Livingston ex rel. Livingston v. Borough of McKees Rocks, 223 F. App'x 84, 88 (3d Cir. March 6, 2007), *quoting* Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) ("the temporal proximity between the two must be 'unusually suggestive' before we will infer a causal link").

Nor has Cooper provided any evidence from which causation between his having filed Grievance No. 113449 and his being denied 90-day PRC reviews can be inferred. Rather, Cooper asks the Court to speculate that a causal connection exists merely because he filed the Grievance and was subsequently denied 90-day PRC reviews. This, coupled with the evidence submitted by Defendants showing that, following an investigation by Grievance Officer Jeffrey R. Rogers, it was determined that Cooper was simply inadvertently omitted from the PRC

---

that Cooper used abusive language and was disrespectful to the staff is contradicted by the block officer's report, he has not submitted that report or otherwise offered any evidence from which a jury could conclude that the block officer reported "satisfactory behavior." See ECF Nos. 221, p. 4; 222-6, p. 2.

schedule, there is no basis upon which to find that Cristini retaliated against Cooper by denying him 90-day PRC reviews. See ECF No. 209-3, pp. 2, 6.

### 3. Interfering with Cooper's Grievances

Finally, to the extent that Defendant Cooper claims that Cristini retaliated against him by intercepting grievances he submitted regarding the denial of his 90-day PRC reviews, his claims also fail. Not only has Cristini stated in his Declaration that, to the best of his recollection, he has no knowledge of any grievances or complaints that Cooper may have made against him while he was Cooper's counselor but that he has never interfered with, or instructed others to interfere with, any of Cooper's grievances. Cristini has also attested to the fact, and Cooper does not dispute, that he is not, and was not, responsible for handling inmate grievances and that there is a box for inmates to put their grievances in on each RHU unit. ECF No. 209-3, pp. 13-14, ¶¶ 12-14. See ECF Nos. 209, p. 4, 26; 222, p. 3, ¶ 26.

Simply put, Cooper has not offered any evidence to the contrary or any evidence that would demonstrate that Cristini interfered with his grievances. Although Cooper takes issue with Cristini's assertion in his Declaration that he had no knowledge of any grievances or complaints Cooper may have lodged against him while Cristini was his counselor, the only contrary evidence Cooper has pointed to is the initial response he received to Grievance No. 113449, wherein the Grievance Officer states that he interviewed Cristini regarding Cooper's allegations. ECF No. 222-5, p. 2. Cristini's Declaration, however, states only that *to the best of his recollection* he had no knowledge of any grievances or complaints Cooper may have filed against him. Given that Cristini was interviewed relative to Grievance No. 113449 on April 6, 2005, ECF No. 222-5, p. 2, and did not execute his Declaration until January 5, 2012, ECF No. 209-3, p. 14, it is entirely

15

plausible that, at that point, he did not recall any grievances Cooper filed against him. Moreover, because, as discussed above, Cooper is otherwise unable to prevail on his retaliation claims, Cristini's knowledge of a single grievance that Cooper filed against him over a year before he is alleged to have retaliated, is of little significance.

In addition, Cooper testified at his deposition, and presently concedes, that he placed the grievances at issue in the mail and doesn't know what happened to them after that. ECF No. 209-2, p. 32. See ECF Nos. 209, p.5, ¶ 28; 222, p. 3, ¶ 28. It is also evident from the record that Cooper filed fourteen grievances between June 15, 2006 and February 7, 2008, that were documented as having been received. ECF No. 209-3, pp. 15-17. See ECF Nos. 209, p.5, ¶ 29; 222, p. 3, ¶ 29.

Under these circumstances, no reasonable fact finder could conclude that Defendant Cristini interfered with, or had block officers intercept, Cooper's grievances. As such, no issue of fact remains for trial and Cristini is entitled to summary judgment on Cooper's retaliation claims.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment [ECF No. 208] is granted. An appropriate order will follow.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: 18 September, 2012

cc:  Troy Cooper, BY-5707
SCI Mahanoy
301 Morea Road
Frackville, PA 17932

All counsel of record via CM-ECF

16